FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAY 27 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SMART CARD INTEGRATORS, INC.,

                Plaintiff,

-against-

GLOBAL PAYMENT TECHNOLOGIES, INC.,

                Defendant.
-----------------------------------------------------------------x

Civil Action No. 10 2411

**COMPLAINT**

Jury Trial Demanded

WEXLER, J.

WALL, M.J.

Plaintiff Smart Card Integrators, Inc., by its attorneys the Law Offices of Ira S. Sacks LLP, alleges on knowledge as to its own acts and otherwise on information and belief as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract and account stated involving Defendant Global Payment Technologies, Inc.'s failure to pay $125,000 due and owing to Plaintiff. Plaintiff seeks damages and related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Venue is properly founded in this district pursuant to 28 U.S.C. § 1391(a).

## THE PARTIES

3. Plaintiff Smart Card Integrators, Inc. ("SCI") is a corporation organized under the laws of California with registered offices at 52420 Ontario Street, Burbank, California 91504.

1

4. Defendant Global Payment Technologies, Inc. ("GPT") is a corporation organized under the laws of the State of Delaware, with a principal place of business at 425 B. Oser Avenue, Hauppauge, New York 11788.

## FACTUAL BACKGROUND

5. On May 4, 2001, SCI and GPT signed a Development and Licensing Agreement (the "Development Agreement") whereby SCI agreed to invent, design and develop Integration Technology, and provide Deliverables, including protocol, software and firmware, in addition to producing any prototypes upon receipt of the necessary resources and information from GPT. In turn, GPT agreed to pay for all costs to develop the Integration Technology and produce the Deliverables, including costs for services and supplies and all fees, royalties and other payments set out in the Development Agreement as required to meet its obligations. The development cost was $500,000, of which $375,000 was paid by GPT per section 4.3 of the Development Agreement at the commencement of the contract.

6. Pursuant to the Development Agreement, after SCI delivered a Deliverable to GPT, GPT had twenty (20) days to either accept or reject the Deliverable in accordance with the Development Agreement. Between September 11, 2001, and March 6, 2002, SCI made certain modifications of the Deliverables at GPT's request. On March 6, 2002, SCI received an email from GPT acknowledging receipt of the Deliverables that SCI produced. Thereafter, twenty (20) days passed without any notice of rejection of the Deliverables.

7. Also on May 4, 2001, SCI and GPT signed a Distribution Agreement, whereby GPT agreed to market and sell the product incorporating the Integration Technology known as the Smart Module Readers (and other products). The remaining $125,000 of the development costs (the "Remainder") was to be paid out of those sales.

8. The Remainder was to be paid from the sales of the Smart Module Readers until the Remainder was paid in full on or before the end of the term of the Distribution Agreement. Upon termination or expiration of the Distribution Agreement, any remaining balance of the Remainder was due. The term of the Distribution Agreement was five years, and as a result, expired on May 4, 2006.

9. By May 2006, GPT had not made any sales of Smart Module Readers, and the Remainder was unpaid. The five year term of the Distribution Agreement expired on May 4, 2006. On May 31, 2006, SCI sent an invoice to GPT for the Remainder (the "Invoice"). Attached hereto as Exhibit A is a true and correct copy of the Invoice.

10. GPT did not object to the Invoice or amount of the Invoice.

11. SCI terminated the Distribution Agreement and the Development Agreement concurrently with the Invoice. GPT understood that both agreements had been terminated and has made no objection to termination.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

12. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 11 as if fully set forth herein.

13. Plaintiff fully complied with all of its material obligations under the Development Agreement and the Distribution Agreement.

14. As described above, GPT has breached its material obligations under both the Development Agreement and Distribution Agreement by failing to pay $125,000 due to Plaintiff.

15. As a result, GPT is liable to Plaintiff in an amount to be proved at trial, presently estimated to be $125,000.

## SECOND CAUSE OF ACTION

## (Account Stated)

16. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 15 as if fully set forth herein.

17. Plaintiff sent GPT the Invoice dated May 31, 2006. GPT did not object to the invoice or the amount of invoice. However, GPT failed to pay the $125,000 due under the Invoice.

18. Accordingly, GPT is liable to Plaintiff for an amount to be proved at trial, presently estimated to be $125,000.

WHEREFORE, Plaintiffs demand judgment as follows:

A.  On the First Cause of Action, damages in an amount to be proven at trial, presently estimated to be $125,000 plus pre- and post-judgment interest;

B.  On the Second Cause of Action, damages in an amount to be proven at trial, presently estimated to be $125,000 plus pre- and post-judgment interest;

C.  Costs; and

D.  Granting Plaintiff such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

Dated: New York, New York
May 26, 2010

Respectfully submitted,

_____
Ira S. Sacks
Jennifer Daddio
Law Offices of Ira S. Sacks LLP
575 Madison Ave., 10th Floor
New York, NY 10022
(212) 605-0130
(212) 605-0353 (fax)

*Attorneys for Smart Card Integrators, Inc.*